1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8

JEAN-MARIE WHITE, et al.,

Plaintiffs,

9

10

v.

11

SANTA CLARA VALLEY WATER
DISTRICT, et al.,

12

Defendants.

13

Case No.  20-cv-04242-VKD

**ORDER GRANTING PLAINTIFFS'
MOTION FOR REMAND**

Re: Dkt. No. 16

14

On June 25, 2020, defendant Santa Clara Valley Water District ("District") removed this

15

consolidated action from the Santa Clara County Superior Court, asserting federal question

16

jurisdiction under 28 U.S.C. § 1331.  Dkt. No. 1.  The parties appeared on September 1, 2020 for a

17

hearing regarding the Court's order to show cause re remand (Dkt. No. 13) and plaintiffs' motion

18

for remand (Dkt. No. 16).  Upon consideration of the moving and responding papers, as well as

19

the oral arguments presented, the Court concludes that the District has not established that removal

20

was proper or that there is a basis for federal jurisdiction.  Accordingly, plaintiffs' motion for

21

remand is granted.[1]

22

**I.    BACKGROUND**

23

Plaintiffs sue for damages to their real and personal property, as well as for other injuries

24

and consequential damages, allegedly sustained as a result of the February 2017 overtopping of

25

the spillway at the Leroy Anderson Reservoir and Dam ("Dam") and flooding along Coyote

26

27

28

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally
adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 9, 10, 12, 14,
15, 25.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Creek.  On January 9, 2018, plaintiff Jean-Marie White and a number of other plaintiffs filed suit

2   in the state court.  Upon the parties' stipulation, several matters were consolidated on June 27,

3   2018, and Ms. White filed a First Consolidated Complaint for Damages ("White Complaint") on

4   June 29, 2018.  Dkt. No. 16-1 ¶ 2; Dkt. No. 1, Ex. A.  Numerous other actions subsequently were

5   consolidated with the White Complaint, and an Omnibus Complaint for Damages ("Omnibus

6   Complaint") ultimately was filed and served on March 15, 2019 on behalf of all plaintiffs.  Dkt.

7   No. 16-1 ¶¶ 4-6, 8; Dkt. No. 1, Ex. B.  In March 2020, an additional complaint entitled *Espitia v.*

8   *Santa Clara Valley Water District, et al.* was also consolidated with the pending action, with the

9   Omnibus Complaint serving as the currently operative pleading.  Dkt. No. 16-1 ¶ 7.

10      Over the past two years while the matter was pending in the state court, the District filed

11   no less than four demurrers and five motions to strike.  Dkt. No. 16-1 ¶¶ 10-13, Exs. 4-7.

12   Currently, there are 262 plaintiffs.  Dkt. No. 16-1 ¶ 8.  The District and the City of San Jose

13   ("City") are the only remaining defendants.  There are three remaining claims for relief in the

14   Omnibus Complaint, all of which are based on state law:  (1) dangerous condition of public

15   property, Cal. Gov. Code § 830, *et seq*., (2) nuisance, Cal. Civ. Code § 3479, *et seq*., and

16   (3) inverse condemnation, Cal. Const., Art. I § 19.

17      On June 25, 2020, over a year after the filing and service of the Omnibus Complaint, the

18   District removed the action to this Court, asserting federal question jurisdiction under 28 U.S.C.

19   § 1331.  Dkt. No. 1.  Although the Omnibus Complaint contains only state law claims for relief,

20   the District's notice of removal asserts that removal is proper because the Omnibus Complaint

21   alleges the failure "to properly and reasonably design, control, supervise, maintain, and operate

22   [the Dam], which is regulated by the Federal Energy Regulatory Commission ("FERC")."  Dkt.

23   No. 1 at ECF p. 3.  According to the District, a federal question sufficient to establish subject

24   matter jurisdiction is presented because "the question of whether there was a failure on the part of

25   Defendant regarding the [D]am is answered with federal laws prescribed by FERC."  *Id.*  As for

26   the timing of the removal, the District asserts that under 28 U.S.C. § 1446(b)(3), it properly

27   removed this matter within 30 days of its receipt of certain discovery responses served by the City

28   in late May 2020 in response to the District's requests for admission.  *Id.* at ECF p. 3-4.  The

District also relies on the cited discovery responses for the proposition that it was not required to obtain the consent of other defendants to the removal of this action. *Id.*

On July 17, 2020, the Court issued an order directing the District to show cause why this action should not be remanded to state court, stating that "the District's conclusory assertions in its removal notice do not identify what 'federal law' is implicated, much less explain how the plaintiffs' claims give rise to substantial federal issues." Dkt. No. 13 at 2. The Court also questioned the timeliness of the removal, noting that the District did not clearly explain how the May 2020 discovery responses relieved the District of the obligation to obtain the City's consent to removal, or how the discovery responses indicated, for the first time in the litigation, "'that the case is one which is or has become removable.'" *Id.* at 3 (quoting 28 U.S.C. § 1446(b)(3)). Additionally, the Court observed that the District's explanation about timing "seem[ed] to be at odds with the District's assertion elsewhere in its notice that removal is triggered by the allegations of the Omnibus Complaint, which was filed in March 2019 and which the District has been aware of for over a year. *Id.* The District was given a July 27, 2020 deadline to respond to the order to show cause. *Id.*

The District timely filed its response on July 27, 2020. Dkt. No. 17. That same day, Ms. White and other plaintiffs filed the present motion for remand, arguing that the District waived any right to remove this matter, the District's removal was untimely, and that the District has failed, in any event, to meet its burden to show that federal jurisdiction exists. Dkt. No. 16. The moving plaintiffs also seek an award of $9,520 in attorney's fees incurred in connection with the present motion. *Id.* The remaining plaintiffs all join in the motion for remand. Dkt. Nos. 18, 19. The District opposes the motion for remand. Dkt. No. 23. The City, which did not join in the removal of this action, takes no position on the issue whether this action should be remanded to the state court. Dkt. No. 22. Accordingly, plaintiffs' motion for remand presents a dispute only as between the plaintiffs and the District. For the reasons discussed below, the Court concludes that this action was untimely and improvidently removed and should be remanded to the state court.

United States District Court
Northern District of California

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.  A claim "arises under" federal law if, based on the well-pleaded complaint rule, the plaintiff alleges a federal claim for relief.  *Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009).  Defenses and counterclaims asserting a federal question do not satisfy this requirement.  *Id.*

Removal to federal court is proper where the federal court would have original subject matter jurisdiction over the complaint.  28 U.S.C. § 1441.  The removal statutes are strictly construed against removal and place the burden on the defendant to demonstrate that removal is proper.  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).  The defendant must state the basis for removal jurisdiction in the removal petition, and the petition cannot be amended to add a separate substantive basis for removal jurisdiction after the period for removal has passed.  *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317 (9th Cir. 1969).  Additionally, the Court has a continuing duty to determine whether it has subject matter jurisdiction.  Fed. R. Civ. P. 12(h).  A case must be remanded to the state court if it appears at any time before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  *Id.*

## III.   DISCUSSION

### A.   The Presumption Against Removal Applies

Preliminarily, the District contends that the presumption against removal does not apply in class actions and mass actions, citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) and *Tanoh v. Dow Chemical Co.*, 561 F.3d 945 (9th Cir. 2009).  Those cases are inapposite in that they concern actions removed pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which extends federal diversity jurisdiction for class actions that

United States District Court
Northern District of California

4

meet certain requirements.[2]  Indeed, *Dart Cherokee*'s holding is expressly limited to CAFA cases.  *See Dart Cherokee*, 574 U.S. at 89 ("In remanding the case to state court, the District Court relied, in part, on a purported 'presumption' against removal. . . .  We need not here decide whether such a presumption is proper in mine-run diversity cases.  It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").  The District does not invoke CAFA as a basis for removal of the present action, and no one contends that CAFA's requirements are satisfied.  Accordingly, the strong presumption against removal applies.  *See Tanoh*, 561 F.3d at 953 (stating that the conclusion that the plaintiffs' claims fell outside CAFA's removal provisions "is consistent with both the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and with the equally well-established presumption against federal removal jurisdiction.").

**B.     The District's Removal Is Untimely**

As noted above, the District asserts that it timely removed this action within 30 days from the service of certain discovery responses served by the City in late May 2020.  Plaintiffs argue that by filing and proceeding through adjudication of numerous demurrers and motions to strike in the state court in January 2019 and again in June 2019, the District waived any right to remove this action long before it removed this action on June 25, 2020.  The District does not dispute the general proposition that "[a] party, generally the defendant, may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum."  *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994), *as amended* (Jan. 20, 1995).  However, the District maintains that it was not apparent that this case was removable until after the District received the City's discovery responses in late May 2020, well after the state court ruled on its demurrers and motions to strike.

---

[2] District courts have original jurisdiction under CAFA if the class has more than 100 members, any member of a class of plaintiffs is a citizen of a state different from any defendant, and the amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2), (5)(B).

United States District Court
Northern District of California

1    Based on the arguments presented, it appears that the overarching issue is whether the District

2    timely removed this matter once this case became removable, if at all.  For the reasons discussed

3    below, the Court concludes that the District's removal is untimely.

4         There are two 30-day periods under 28 U.S.C. § 1446(b) in which a case may be removed

5    to federal court.  "The § 1446(b) 'time limit is mandatory and a timely objection to a late petition

6    will defeat removal.'"  *Busch v. Jakov Dulcich & Sons LLC*, No. 15-cv-00384-LHK, 2015 WL

7    3792898 at *3 (N.D. Cal. June 17, 2015) (quoting *Fistoe v. Reynolds Metals Co*., 615 F.2d 1209,

8    1212 (9th Cir.1989)).  "A motion to remand the case on the basis of any defect other than lack of

9    subject matter jurisdiction must be made within 30 days after the filing of the notice of removal

10   under section 1446(a)."  28 U.S.C. § 1447(c).  The present motion to remand timely was filed as

11   an objection to the timing of the District's removal.

12        The first period for removal occurs within 30 days after the defendant's receipt, through

13   service or otherwise, "of a copy of the initial pleading setting forth the claim for relief upon which

14   such action or proceeding is based," or "within 30 days after the service of summons upon the

15   defendant if such initial pleading has then been filed in court and is not required to be served on

16   the defendant, whichever period is shorter."  28 U.S.C. § 1446(b)(1).  Although the District's

17   notice of removal states that removal is based on allegations in the Omnibus Complaint that

18   purportedly give rise to federal question jurisdiction, the Omnibus Complaint was filed and served

19   over a year before the District removed this action here.  Thus, the District does not, and cannot,

20   contend that this action timely was removed under this provision of the removal statute.

21        Instead, the District seeks to avail itself of the second period of removal, which is available

22   (except in cases involving diversity jurisdiction) as follows:

23            *[I]f the case stated by the initial pleading is not removable*, a notice
             of removal may be filed *within 30 days after receipt by the*
24           *defendant, through service or otherwise*, of a copy of an amended
             pleading, motion, order *or other paper from which it may first be*
25           *ascertained that the case is one which is or has become removable*.

26   *Id*. § 1446(b)(3) (emphasis added).  Although the District's notice of removal asserts that the

27   present action is removable based on the allegations of the Omnibus Complaint, the District

28   contends that it timely removed this matter because the City's May 2020 responses to the

United States District Court
Northern District of California

6

District's requests for admission constitute the "other paper from which it may first be ascertained that the case is one which is or has become removable."  Specifically, the District argues that prior to its receipt of the City's May 2020 discovery responses, the action was not removable because the City refused to consent to removal.  Because the City's discovery responses admit that the District solely owns and controls the Dam (*see* Dkt. No. 1, Ex. D), the District says that it was only after receipt of the discovery responses that the District was able to confirm that it could unilaterally remove this action without consent from the City.

Although the District and the plaintiffs disagree about whether the Omnibus Complaint's allegations clearly allege the District's sole ownership and control of the Dam, the Court observes that in ruling on the demurrers and motions to strike in 2019, the state court appears to have treated the assertion that the District owns and operates the Anderson Reservoir as unambiguously alleged in the earlier complaints and in the Omnibus Complaint, which were filed and served over a year before the District removed this action.  *See* Dkt. No. 16-1 Exs. 4 and 5 at ECF p. 23 and 82.

In any event, the District's sole ownership and control of the Dam is not disputed. Plaintiffs argue that the District cannot use the second 30-day period for removal under § 1446(b)(3) based on the District's sole ownership and control of the Dam because that is a fact that is and always was well known to the District.  Indeed, the District readily acknowledges that it solely owns and controls the Dam and that it has known that fact all along.  *See* Dkt. No. 23 at 10 ("The issue is not whether the District objectively knew whether it was the sole owner of the dam—of course it always knew that.").  Citing *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005), the District nevertheless contends that for purposes of removal, its objective knowledge is irrelevant and that the only "relevant inquiry is whether, and when, the operative complaint demonstrated the District's sole ownership."  Dkt. No. 23 at 10.  The District's arguments are not persuasive.

To begin, *Harris* is readily distinguishable in that it did not concern a situation where the relevant facts were known to the removing defendant.  Rather, *Harris* concerned a potential diversity action and an "indeterminate pleading" where the parties' citizenship was unstated or

ambiguous. *Harris*, 425 F.3d at 693. In that context, the Ninth Circuit addressed the question "whether, under 28 U.S.C. § 1446(b), the burden lies with the defendant to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint, or whether the determination be limited to the face of the initial pleading." *Id*. The Ninth Circuit held that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id*. at 694. Unlike *Harris*, the District bases the timing of its removal on the fact of its sole ownership and control of the Dam, which the District admits it has always known and which required no investigation or confirmation by the District.

Moreover, the removal in *Harris* was triggered by a voluntary act of the plaintiff, i.e., a letter from plaintiff's counsel that suggested that the plaintiff had abandoned his claims against the non-diverse defendant. *See id*. at 691. Courts, including the Ninth Circuit, have held that "§ 1446(b)(3) applies only where 'a "voluntary" act of the plaintiff brings about a change that renders the case removable.'" *Busch*, 2015 WL 3792898 at *4 (quoting *Self v. Gen. Motors Corp*., 588 F.2d 655, 657-58 (9th Cir. 1978)). In the present action, the District has not identified any act by the plaintiffs that triggered removal. Nor has the District presented authority suggesting that removal may be triggered by the City's service of responses to the District's own discovery requests.

The Court finds persuasive the decision in *Rhodan v. Job Options, Inc*., No. 19-CV-1141-CAB-BGS, 2019 WL 3887351 (S.D. Cal. Aug. 19, 2019). In that case, the plaintiff sued his employer in state court for alleged violation of state laws requiring access to employee records. Although the employer undoubtedly knew where the plaintiff worked, the complaint did not state plaintiff's work location. The plaintiff later moved to amend his complaint to include, among other things, a statement that he worked at Camp Pendleton, and the employer then removed on the ground that plaintiff's proposed amended complaint recently revealed that he worked at a federal enclave. In granting the plaintiff's motion for remand, the *Rhodan* court accepted that federal question jurisdiction existed based on the fact that the plaintiff worked at a federal enclave. But while acknowledging that the employer had no duty to investigate the basis for removal, the

court also noted that "a defendant is required to apply a reasonable amount of intelligence in ascertaining removability," and "should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so." *Rhodan*, 2019 WL 3887351 at *2 (internal quotations and citations omitted). Putting aside that the employer "presumably knew all along that Plaintiff worked at Camp Pendleton," the court noted that documents the employer itself produced to plaintiff more than 30 days prior to removal indicated that the plaintiff worked there, and that the employer could not turn a blind eye to its own documents produced in discovery. *Id.*

In the present matter, it is apparent from the District's arguments that the issue underlying the timing of removal is not whether the District was able to ascertain its sole ownership and control of the Dam through the Omnibus Complaint or some "other paper." Rather, the actual obstacle to the District's desire to remove this matter was the fact that the City would not consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."). The District's strongest cited authority is *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006). However, *Durham*, like *Harris*, is also readily distinguishable from the present action and does not support the District's arguments. In *Durham*, the plaintiff sued a number of defendants, including government contractor Lockheed Martin Corp. ("Lockheed"), for injuries allegedly caused by exposure to asbestos during his service with the U.S. Air Force. Although it was apparent from the initial pleadings that Lockheed could have removed the matter based on the fact that the suit concerned a tort that arose on a federal enclave, Lockheed did not attempt to remove on that basis because it did not believe that other defendants would be willing to consent to removal. The plaintiff later served interrogatory responses that revealed *a different ground* for removal that allowed Lockheed to unilaterally remove the case based on the statute providing for removal by federal officers and their agents, 28 U.S.C. § 1442. The Ninth Circuit concluded that Lockheed timely removed the case within 30 days from the plaintiff's disclosure of sufficient facts for federal officer removal under § 1442, even though Lockheed previously was aware of a different basis for removal. *Id.* at 1253.

9

United States District Court
Northern District of California

1     There are two significant facts that distinguish the present case from *Durham*.  First,

2  *Durham* concerned removal under 28 U.S.C. § 1442 for federal officers and their agents, which is

3  construed more liberally than removals under § 1441.  *See Durham*, 445 F.3d at 1252-53.  Second,

4  Lockheed's removal under the second 30-day window was triggered by an act of the plaintiff—

5  i.e., service of the plaintiff's discovery responses disclosing the details of his claim—that provided

6  a basis for Lockheed to assert a different ground for removal than the one that was apparent in the

7  initial pleading.  *See id.* at 1251 ("Until Durham revealed which aircraft he had worked on during

8  his Air Force career, Lockheed couldn't assert either that its actions were taken pursuant to a

9  federal officer's directions, or that it had a colorable federal defense.").  Here, by contrast, the

10  District has had only one basis for removing this case based on its sole ownership and control of

11  the Dam, a fact known to the District all along.  Indeed, insofar as the District contends that it

12  could not have removed any earlier because the City would not consent, *Durham* suggests that the

13  District necessarily would be "stuck in state court":

14          Mindful of these differences [between § 1441 and § 1442], and the
          justifications for removal that they reflect, we return to the
15          timeliness of Lockheed's removal under section 1446.  Where the
          timeliness of removal under section 1441 is at issue, it makes sense
16          to presume that removal statutes are to be strictly construed against
          federal court jurisdiction.  *When the defendant receives enough facts*
17          *to remove on any basis under section 1441, the case is removable,*
          *and section 1446's thirty-day clock starts ticking.  If the defendant*
18          *can't convince his co-defendants to remove, he's stuck in state*
          *court, and later disclosure that the case is also removable on*
19          *another ground under section 1441 doesn't help bring him into*
          *federal court.*
20

21  *Durham*, 445 F.3d at 1253 (emphasis added).  There is nothing about the City's May 2020

22  discovery responses that either creates federal jurisdiction or makes the fact of federal jurisdiction

23  newly ascertainable by the District.

24          Accordingly, the District has not demonstrated that it timely removed this matter under

25  § 1446(b)(3).  Even assuming that the District's removal was timely, for the reasons discussed

26  below, the District has not established a basis for federal subject matter jurisdiction.

27      **C.      The District Has Not Established Federal Jurisdiction**

28          The Omnibus Complaint indisputably contains only state law claims for relief and does not

10

assert any claims under federal law.  "As a general rule, '[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  *Arco Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of the State of Montana*, 213 F.3d 1108, 1113 (9th Cir.2000) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  "As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims."  *Id.* at 1114.  "However, under the artful pleading rule, 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'"  *Id.* (quoting *Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 22, (1983)).  Thus, a state law claim for relief may be deemed to arise under federal law where (1) federal law completely preempts state law; (2) the claim is necessarily federal in character; or (3) the right to relief depends on the resolution of a substantial, disputed federal question.  *Id.*  Nevertheless, it is a "long-settled" principle "that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986).  Additionally, a claim does not arise under federal law merely because of a need to apply federal law in a state law claim.  Rather, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The District does not contend that plaintiffs' claims are necessarily federal in character.  Instead, the District asserts that removal is proper because the Omnibus Complaint raises a question of federal conflict preemption and because plaintiffs' claims depend on the resolution of a substantial, disputed federal issue.  *See* Dkt. No. 17 at 2; Dkt. No. 23 at 6-9.  In essence, the District argues that this action properly is before this Court because the operation and maintenance of the Dam is governed by the Federal Power Act ("FPA"), 16 U.S.C. §§ 792, *et seq.* and FERC, and not by state law standards.

At oral argument, however, the District acknowledged that conflict preemption by itself

11

does not provide a basis for removal.  "Unlike complete preemption, preemption that stems from a conflict between federal and state law is a defense to a state law cause of action and, therefore, does not confer federal jurisdiction over the case."  *Arco Envtl. Remediation, LLC*, 213 F.3d at 1114.  The District confirmed that it is not claiming that complete preemption gives rise to federal jurisdiction in this case.  Indeed, "[p]reempted state law claims may be removed to federal court only in the rare instances where Congress has chosen to regulate the entire field."  *Id.*; *see also Ansley v. Ameriquest Mortgage Co*., 340 F.3d 858, 862 (9th Cir. 2003) (observing that complete preemption has been found to exist only under the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003)).

Thus, the propriety of removal turns on the District's contention that plaintiffs' claims give rise to federal jurisdiction because they necessarily raise actually disputed and substantial issues of federal law that are capable of resolution in federal court without disrupting the federal-state balance approved by Congress.  *See Gunn*, 568 U.S. at 258.  Here, the District's arguments are based largely on generalities, some of which have no apparent relevance or applicability to the present matter.  The District argues that the Omnibus Complaint necessarily raises a federal issue in view of plaintiffs' central contention that the overtopping of the spillway at the Dam was caused by the alleged failure to properly and reasonably design, control, maintain and operate the Dam. Dkt. No. 17 at 4; Dkt. No. 23 at 7.  But the District does not clearly explain how any of plaintiffs' particular claims will necessarily require the application of federal law to the facts of the present case.  *Gunn*, 568 U.S. at 259.  Indeed, the District's notice of removal does not identify any particular claim that gives rise to federal jurisdiction.  *See* Dkt. No. 1.  And that remains true of most of the arguments presented in the District's response to the Court's order to show cause and in its opposition to plaintiffs' motion for remand.  *See* Dkt. Nos. 17, 23.  The District further contends that "federal jurisdiction over Plaintiffs' claims i[s] actually disputed by the face of the complaint itself," arguing that negligence claims under California law do not establish the applicable standard of care. Dkt. No. 17 at 4; Dkt. No. 23 at 7.  There is, however, no negligence claim at issue.  While the District maintains that its operation and maintenance of the Dam "is

1

indisputably substantial as it forms the basis for all of Plaintiffs' claims," (Dkt. No. 23 at 7), the

2

Supreme Court has made clear that "it is not enough that the federal issue be significant to the

3

particular parties in the immediate suit"; rather, the "substantiality inquiry . . . looks instead to the

4

importance of the issue to the federal system as whole." *Gunn*, 568 U.S. at 260.

5

The only claim mentioned in the District's briefing is plaintiffs' fourth claim for relief

6

under Cal. Gov. Code § 830, *et seq.*, which essentially provides that a public entities may be held

7

liable for reasonably foreseeable injuries proximately caused by the dangerous conditions of their

8

property.[3]  As noted above, the District does not clearly explain how this claim for relief

9

necessarily requires the application of federal law to the facts of this case, except to say that

10

plaintiffs' claims are all based on the operation and maintenance of the Dam.  The District's

11

essential argument is that the FPA and FERC regulations preempt states from imposing their own

12

tort law standards of care on federally licensed hydroelectric facilities.  Dkt. No. 23 at 7; Dkt. No.

13

17 at 3-4.  Thus, according to the District, how the Dam is designed, operated and maintained are

14

matters that are highly regulated as a matter of federal law, and state regimes must give way to the

15

federal regulatory regime with respect to determining liability.  Here, the District claims that as a

16

FERC-licensed facility, the Dam is required by section 10(c) of the FPA to "conform to such rules

17

and regulations as [FERC] may from time to time prescribe for the protection of life, health, and

18

property." 16 U.S.C. § 803(c).  That federal standard, argues the District, does not contemplate

19

20

_____

[3] California Government Code § 835 provides:

21

22

    Except as provided by statute, a public entity is liable for injury caused by a
    dangerous condition of its property if the plaintiff establishes that the
    property was in a dangerous condition at the time of the injury, that the

23

    injury was proximately caused by the dangerous condition, that the
    dangerous condition created a reasonably foreseeable risk of the kind of

24

    injury which was incurred, and that either:

25

    (a)  A negligent or wrongful act or omission of an employee of the public
        entity within the scope of his employment created the dangerous

26

        condition; or

27

    (b)  The public entity had actual or constructive notice of the dangerous
        condition under Section 835.2 a sufficient time prior to the injury to

28

        have taken measures to protect against the dangerous condition.

United States District Court
Northern District of California

considerations of reasonableness and is therefore at odds with California Government Code § 835.4, which essentially provides that an entity may avoid liability for creating or failing to remedy a dangerous condition if the entity establishes that it acted reasonably in light of the practicability and costs of pursuing available courses of action.[4]

The parties disagree about whether California Government Code § 835.4 sets a standard of care (as the District argues) or whether it simply provides a defense to liability (as plaintiffs contend). Nevertheless, there are other, more fundamental, issues that cause the Court to question the District's conclusion that plaintiffs' claim for dangerous condition of public property presents an actually disputed substantial federal issue. First, inasmuch as the District's position is premised on the assertion that the Dam is a FERC-licensed facility, its arguments appear to be a nonstarter. Here, plaintiffs point out that what the District presents as a FERC "license" actually appears to be an order granting an *exemption* from the FPA, including licensing, with respect to the Dam. Dkt. No. 17-1, Ex. A.

Second, most of the cases relied on by the District do not address the threshold question regarding removal jurisdiction under 28 U.S.C. § 1331, but deal with dispositive motions

---

[4] California Government Code § 835.4 provides:

(a) A public entity is not liable under subdivision (a) of Section 835 for injury caused by a condition of its property if the public entity establishes that the act or omission that created the condition was reasonable. The reasonableness of the act or omission that created the condition shall be determined by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of taking alternative action that would not create the risk of injury or of protecting against the risk of injury.

(b) A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury.

United States District Court
Northern District of California

concerning preemption-based defenses.  For example, the District points out that in *Simmons v. Sabine River Auth. La*., 732 F.3d 469 (5th Cir. 2013), the Fifth Circuit affirmed the dismissal of the plaintiffs' action, concluding that the FPA preempted their negligence claim for damages from flooding and erosion allegedly caused by the defendants' failure to raise the minimum reservoir elevation.  *See id*. at 477.  The *Simmons* plaintiffs, however, alleged a federal constitutional claim for due process violations.  *Id*. at 472.  Federal question jurisdiction therefore appeared on the face of the plaintiffs' complaint at the time of removal, and there was no need for the *Simmons* court to decide whether the plaintiffs' claims raised a disputed and substantial federal issue.  Unlike *Simmons*, plaintiffs in the present action have not alleged a federal claim for relief, and the District has not demonstrated that *Simmons* compels the conclusion that the "Omnibus Complaint puts this preemption question squarely in this Court's crosshairs, and confers a basis for removal."  Dkt. No. 23 at 8.  *See Baca v. Sabine River Auth.*, No. 7-253-BAJ-EWD, 2017 WL 9485534, at *7-*8 (M.D. La. Oct. 31, 2017) (concluding that *Simmons* does not support the exercise of federal jurisdiction where the plaintiffs did not assert a federal claim for relief), report and recommendation adopted, 2017 WL 5957099 (M.D. La. Nov. 30, 2017).

Third, although two cases cited by the District do address federal jurisdiction in the context of a motion to remand, those cases held that the plaintiffs' negligence claims against federally-licensed dam operators necessarily raised a substantial federal issue where the parties disputed the duties owed to the plaintiffs and whether the applicable source of the standard of care arose from state law or from the defendants' federal license.  *See Carrington v. City of Tacoma*, 276 F. Supp. 3d 1035, 1039, 1041-43 (W.D. Wash. 2017); *Funderburk v. S.C. Elec. & Gas Co*., 179 F. Supp. 3d 569, 581-83 (D.S.C. 2016).  As noted above, there is no negligence claim at issue in the present action, and the District does not dispute plaintiffs' assertion that the FERC order it submitted does not grant a license with respect to the Dam, but instead provides the District with an exemption from the FPA, including licensing.  *See* Dkt. No. 24 at 10 n.2; Dkt. No. 25.

The District nonetheless maintains that the submitted FERC order, together with a November 2019 letter from FERC to the District postdating the events at issue in this lawsuit and requesting information from the District about a proposed seismic retrofit project (Dkt. No. 17-1,

Ex. B), demonstrate that FERC has authority with respect to the Dam. While FERC's involvement may implicate federal issues and the federal regulatory regime under the FPA, the District's arguments fall short of explaining how plaintiffs' claim for dangerous condition of public property necessarily requires the application of federal law to the facts of this case. But even assuming that resolution of that claim will require the application of federal law, the District has not demonstrated that any applicable federal law actually is disputed by the parties. As noted above, the District mentions the claim for dangerous condition of public property solely for the proposition that state and federal law conflict because the state law includes a reasonableness factor that is not contemplated by section 10(c) of the FPA governing FERC licensees. Dkt. No. 23 at 8. Without explaining how this alleged conflict is relevant to plaintiffs' claim, the District argues that federal law is actually disputed because plaintiffs allege "that state tort law required the District to draw down [the Dam] sooner and/or upgrade [the Dam], where the District argues that FERC imposed no such obligations in 2017." Dkt. No. 17 at 4; Dkt. No. 23 at 7. The Omnibus Complaint, however, indicates that plaintiffs base the District's liability on the failure to "implement effective water management and flood control measures—e.g., or to use pumps and/or siphons to reduce the level of water in the Reservoir to meet the 68% water level restrictions required by the State and federal agencies." Dkt. No. 1 at ECF p. 130 (Omnibus Complaint ¶ 130). It is not apparent from the record that there is an actual dispute over the applicability of federal law or regulations or what federal law or regulations may have required as compared with state law. Indeed, at the motion hearing, the District seemed to acknowledge that there currently is not enough information in the record presented for this Court to determine to what extent the FPA's regulatory scheme applies to plaintiffs' claims and whether that scheme actually conflicts with state law. Dkt. No. 25. The District instead suggested that these are issues to be further developed by the parties and decided by the Court on another day. *Id.*

It is the District's burden to establish that federal jurisdiction exists. Its notice of removal is exceedingly vague, and in its response to the Court's order to show cause and the plaintiffs' motion for remand, the District has, at best, demonstrated the potential presence of a federal issue in this matter, but has not shown that plaintiffs' claims necessarily raise actually disputed and

16

1   substantial issues of federal law.  Accordingly, the District has not met its burden to establish that

2   federal jurisdiction exists.

3       **D.    Plaintiffs' Request for Fees**

4       The White plaintiffs seek a total of $9,520 in fees incurred as a result of the District's

5   removal of this action.  Specifically, plaintiffs request $7,140 in fees their counsel incurred in

6   reviewing the District's notice of removal and preparing the present motion for remand.  Dkt. No.

7   16-1 ¶ 15.  Plaintiffs request an additional $2,380 for an estimated four hours counsel anticipated

8   would be spent reviewing the District's opposition and preparing a reply.  *Id*.  The District does

9   not take issue with counsel's hourly rates or the total time spent or estimated to be spent on this

10  matter.  The point of contention is whether the District had an objectively reasonable basis for

11  removal.

12      "An order remanding the case may require payment of just costs and any actual expenses,

13  including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  The award of

14  fees and costs is left to the discretion of the district court, *Lussier v. Dollar Tree Stores, Inc*., 518

15  F.3d 1062, 1065 (9th Cir. 2008), and the fees provision of the removal statute does not create a

16  presumption either in favor of, or against, an award of fees, *Martin v. Franklin Capital Corp*., 546

17  U.S. 132, 138-39 (2005).  Nonetheless, "[a]bsent unusual circumstances, courts may award

18  attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

19  basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should

20  be denied."  *Id*. at 141.  For example, the objective reasonableness of removal may depend on the

21  clarity of the applicable law and whether such law "clearly foreclosed the defendant's basis of

22  removal."  *Lussier*, 518 F.3d at 1066-67.  Ultimately, "the standard for awarding fees should turn

23  on the reasonableness of the removal."  *Martin*, 546 U.S. at 141.  And the appropriate test for an

24  award of fees "should recognize the desire to deter removals sought for the purpose of prolonging

25  litigation and imposing costs on the opposing party, while not undermining Congress' basic

26  decision to afford defendants a right to remove as a general matter, when the statutory criteria are

27  satisfied."  *Id*. at 140.

28      For the reasons discussed above, the District's removal under § 1446(b)(3) was not

United States District Court
Northern District of California

objectively reasonable, as the service of the City's discovery responses was not a voluntary act by plaintiffs, nothing about the City's discovery responses converted a nonremovable case to a removable one, and the District has not, in any event, plausibly established that federal jurisdiction exists.  The Court finds that the moving plaintiffs' counsel's hourly rates and the time they spent on matters as a result of the District's removal of this action to this Court are reasonable.[5]  *See Farrell v. JPMorgan Chase Bank*, No. 4:20-cv-03709 YGR, 2020 WL 6318717, at *5 (N.D. Cal. Oct. 28, 2020).  Accordingly, the Court orders the District to pay the moving plaintiffs $9,520 for the fees incurred as a result of the District's improper removal.

## IV.    CONCLUSION

Based on the foregoing, plaintiffs' motion for remand is granted, and the District shall pay to the moving plaintiffs $9,520 for the attorneys' fees incurred as a result of the removal of this action.  The Clerk of the Court shall remand this matter to the Santa Clara County Superior Court and close this Court's file.

**IT IS SO ORDERED.**

Dated: November 9, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[5] Although plaintiffs' requested fees for time spent on their reply papers is an estimate, the Court notes that plaintiffs have not requested fees for the time spent at the motion hearing, which was over an hour.  Dkt. No. 25.